UNITED STATES DISTRICT COURT
District of Minnesota
Criminal No. 14-164 (ADM/LIB)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | GOVERNMENT'S POSITION ON SENTENCING |
| JOHNNIE EARL LONG, | |
| Defendant. | |

COMES NOW the United States of America, by and through its undersigned attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Andrew R. Winter, Assistant United States Attorney, and submits the following position on sentencing.

Defendant pleaded guilty to one count of False Information and Hoaxes, in violation of 18 U.S.C. § 1038(a)(1). Both the parties and the Presentence Investigation Report ("PSR") concluded that the guideline range for imprisonment is 37 to 46 months. PSR, ¶ 96. In this memorandum, the government sets forth its rationale for a requested sentence of 46 months imprisonment, three years of supervised release and an order for restitution in the amount of $87,142.

Discussion

The Court first must determine what constitutes a reasonable sentence as guided by the factors of Title 18, United States Code, Section 3553(a). As a first step, the Court must determine the applicable Sentencing Guidelines. Although the Guidelines are advisory, the Court must "remain cognizant of them throughout the sentencing process."

*Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). Indeed, a court may "'rest [its] decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case' if the court finds that the case before it is typical." *United States v. Robinson*, 516 F.3d 716, 718 (8th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 357 (2007)). In addition to considering the Guidelines, Section 3553(a) requires the Court to analyze a number of factors, including the nature and circumstances of the offense, the history and circumstances of the defendant, the need for the sentence to reflect the seriousness of the offense, the need for deterrence, the need to protect the public from further crimes of the defendant, and the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a).

Defendant pleaded guilty to the False Information and Hoaxes as charged in Count 1 of the Indictment on August 20, 2014. In his plea agreement, Defendant admitted to an extraordinary series of criminal acts, culminating in faking his own kidnapping on two separate occasions – all with the goal of seeking retribution against the actual victims of his crimes and the law enforcement entities charged with the investigation. In his plea agreement, Defendant consented to the application of a number of Chapter 2 offense characteristics and Chapter 3 adjustments. These include a two-level increase for making multiple threats, a 4-level increase for the expenditure of substantial funds to respond to the offense[1], a 3-level increase for government-employee victims, and a 2-level increase for obstruction of justice. While the application of these offense characteristics and

---

[1] Law enforcement entities tallied over $87,000 in costs associated with responding to Defendant's hoaxes and false reporting.

2

adjustments address the egregious nature of Defendant's conduct, the full scope of his crimes justifies a top-of-the-range sentence.

## The Nature and Circumstances of the Offense

Defendant's criminal conduct began with the July 2013 delivery of a threatening letter to victim C.D., the attorney representing Defendant's ex-wife. Upon opening the envelope, white powder spilled onto the victim's lap as she was confronted by the following words spelled out on a piece of paper inside: "U R DEAD". Defendant also sent a threatening email to C.D. using anonymizing software. His use of this software made the email appear to have come from J.S., a male friend of his ex-wife. This email in turn caused C.D. to wrongly identify J.S. to the police as a suspect for the white powder letter sent by Defendant.

Over the course of the summer of 2013, Defendant then placed numerous hoax explosive devices on or near the property of C.D., J.S., D.P., and himself – once again in a calculated effort to not only deflect suspicion from himself and towards J.S., but to garner sympathy for himself as a victim. While these devices were later found to be harmless, great care was taken by Defendant to design devices that would instill a maximum amount of fear in his victims.

Not satisfied with the terror already generated by the white powder letter and the multiple hoax explosive devices, Defendant proceeded to mail six more white powder letters to the Pine County Government Center on November 19, 2013. The disturbing content of these letters[2] illustrates not only the threat to public safety presented by

---

[2] The text of these letters appears at ¶¶ 18-19 of the PSR.

Defendant, but also Defendant's manipulative nature. Defendant asserted in his letter that he, himself, was a dangerous person and he lambasted the civil servants for "the lack of procedure in dealing with his crimes."

In mailing these letters, he attempted to throw law enforcement off his trail by making it appear as if the author was an unbalanced individual bent on framing Defendant for conduct he did not commit. As a result of these mailings, numerous individuals were exposed to the fear of contamination or death and the entire Pine County Government Center was evacuated. Law enforcement responded by conducting a thorough and exhaustive investigation. When confronted about these courthouse threats, Defendant once again lied and blamed J.S. – an entirely innocent man – for his own misdeeds.

Astonishingly, Defendant Johnnie Earl Long was not finished with his crimes and manipulations. In November and December of 2013, Defendant feigned his own kidnapping. See PSR, ¶¶ 22-23. Again law enforcement devoted considerable resources to investigating Defendant's "victimization" – all which later proved to be fabricated.

On December 13, 2013, Defendant's run appeared to have come to an end. After denying the aforementioned criminal conduct for nearly 30 minutes, Defendant acknowledged responsibility for the white powder letter to C.D., the fake explosive devices, placing false tips left on the tip line[3] and the feigned kidnappings. It seemed as if Defendant had reached a turning-point. But that was not to be the case. Within days of his arrest and confession, a cooperating individual in the jail came forward with

---

[3] According to law enforcement, Defendant called the Sheriff's tipline on multiple occasions leaving false and misleading tips designed to misdirect the investigation. See PSR, ¶ 24.

information that Defendant had once again set in motion a scheme for the delivery of additional white powder letters to the same victims of the November 13th courthouse threats. Defendant had explained to the cooperating inmate that he believed he would be exonerated for his earlier crimes if the same crimes could occur again against the same victims – all while Defendant was in custody. See PSR, ¶ 26. But for the cooperator's information, yet another evacuation of the Pine County Government Center and another resource-consuming investigation by law enforcement would likely have taken place.

### The Characteristics of the Defendant

Defendant's characteristics present very few, if any, mitigating factors. Defendant came from a self-described "close-knit" family, and had what appears to be a conventional childhood and adolescence. PSR, ¶ 63. Defendant's time in the Armed Forces passed without trauma and ended in 1996 with an Honorable Discharge from Marine Corps. PSR, ¶ 87. Defendant is in good physical condition and he reports no current mental health conditions or chemical abuse issues that would arguably mitigate his behavior. Defendant held steady employment with the Union Pacific Railroad from 1998 until the time of his arrest in 2013. Clearly, while Defendant's failed marriage was a triggering event, it provides no justification or mitigation for the ensuing spree of criminal behavior by Defendant.

### CONCLUSION

The prison term requested by the government serves the needs of sentencing to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further

crimes of Defendant, and to avoid unwarranted sentencing disparities among similarly situated defendants.

As the PSR illustrates, Defendant was determined and unrepentant in his quest to exact revenge against those he perceived as having wronged him and his crimes took thought, persistence, planning, and deceit. His personal characteristics present few, if any, mitigating factors and the need to protect the public from his criminal behavior trumps any suggested call for leniency. The government believes that under the very unique the circumstances of this case, a sentence at the top of the range represents the only sentence that comports with the factors set forth in 18 U.S.C. § 3553(a).

Dated:  July 23, 2015                                  Respectfully submitted,

ANDREW M. LUGER
United States Attorney

*s/ Andrew R. Winter*

ANDREW R. WINTER
Assistant United States Attorney
Attorney ID No. 232531