UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 14-164 (ADM/LIB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANT'S SENTENCING |
| v. | ) | POSITION PLEADINGS |
| | ) | |
| Johnnie Earl Long, | ) | |
| | ) | |
| Defendant. | ) | |

Johnnie Long, by and through his attorney, submits this sentencing position pleading for consideration of the appropriate sentence to impose.

The Pre-sentence Report sets forth that the offense level is 20 and criminal history category is II. The resulting guidelines range, as anticipated by the plea agreement, is 37-46 months.

This guideline range does not take into consideration numerous facts that, when applied to the law set forth in 18 U.S.C. 3553(a), warrant a downward variance. Respectfully, Mr. Long requests the Court weigh the information below, which is substantiated in the pre-sentence report, and find that a sentence of not greater than 24 months is sufficient, but not greater than necessary.

    I.      A Life of Family, Work and Community.

At the age of 44, Johnnie Long's life turned upside down. The addictions of his wife, whom he believed to be the love of his life, were ravaging her and their relationship. Despite

his best efforts, he could not help her. Then he learned that she was having an affair with his best friend. Devastated, he knew divorce as the only answer. His life spiraled out of control.

Prior to the decline of his marriage, Mr. Long had lived something of the American dream. His childhood, spent mostly in Iowa, was filled with family, friends and the regular activities of a boy growing up in the 1970s and 1980s. The quiet family life in Iowa built the foundation that continued for him – and his time with family was time well spent. He fished and hunted with his father and grandfather, who according to Mr. Long's mom was the greatest influence on young Mr. Long. His father coached his baseball team. He spent his high school years on the varsity wrestling team and playing in the orchestra.

His adult life has been successful. Choosing one of the most intense branches of the military, he spent six years in the Marines. Going in as an enlisted man, he worked his way up to Sargent. In addition to promotions, he received a variety of awards while in the military. (PSR Para. 87: meritorious unit commendation; national defense service medal; two medals for good conduct medal; two certificates of commendation; and a letter of appreciation.) He was a good soldier.

After receiving an honorable discharge, he decided to follow his father's career steps and got a job on the railroad. As with his experience in the Marines, his work ethic and skills propelled him up the promotion ladder. His success at work on the railroads gave him great pride, pride beyond personal success. He was proud to follow in the footsteps of his father, starting as a lineman, working up to being an engineer.1 That pride grew when one of his sons

---

1 The importance of these factors – his upbringing, military and job successes – go directly to the factors in 18 USC 3553(a) related to the question of recidivism. Many of the considerations under Sec. 3553(a) go to the question of recidivism. Combined with his age (now 46 years

chose to work for the railroad.    For a period of time, they worked together.

Mr. Long enjoyed his life in central Minnesota.    His home was modest.    The neighborhood is one of huge yards and neighbors who waved to one another.

With the successes in his life, the acts he carried out in 2013 cause one to pause.    How can a man so successful, so family-oriented, take steps that – while not dangerous – certainly were disruptive to many people?    He has had to consider, think, and resolve his actions within himself.

> "Vile and ingrate! too late thou shalt repent
>
> The base injustice thou hast done my love.
>
> Yes, thou shalt know, spite of thy past Distress,
>
> And all those ills which thou so long hast mourn'd;
>
> Heav'n has no Rage like Love to hatred turn'd,
>
> Nor Hell a Fury like a Woman scorn'd."
>
> - *The Mourning Bride* by William Congreve (1697)

---

old), the likelihood of Mr. Long reoffending is almost non-existent.    The Government asserts that his history provides no basis for mitigation. Their position asserts, in essence, that only a background void of success is a basis for sentencing mitigation.    This premise fails.    Mr. Long's family and work history provide a foundation to set out that the events of December 2013 are out of character for him, that he is not a threat to the community, that prison is unnecessary. It is, in fact, his track record – his history and background- that warrants a variance, downward, to no more than a 24 month sentence.

The final line of this piece is more familiarly known as "Hell hath no fury like a woman scorned."   Through the ages, the pain of heartache that comes when one learns that a spouse/girlfriend/lover has a paramour can be all consuming.   When the individual to whom one has entrusted their innermost thoughts, shared joys, and been most intimate with betrays the relationship in the deepest way, by taking that intimacy to another, creates disillusion, pain that feels unresolvable.   Actions taken in the throes of these emotions are themselves without rationale.

Through the divorce, Mr. Long believed the termination of the relationship would serve as a salve to his broken heart.   Unfortunately, he found a court system that, as too often occurs with dealing with marital strife, viewed the woman is always right.   He wanted to be heard and he was not.

He greatly regrets his actions.   He regrets them because of the total devastation is has caused, a tornado through the community, his family and his life.   The reparations will take an unknown amount of time to make.   A middle-aged man, he is starting over.   Loss of family, loss of community and loss of career.

Certainly he is persona non grata in Pine County.   Additionally, his sons stopped communicating with him after learning of the indictment.   He is told that a felony on his record precludes him from returning to the railroad, a work place that five generations of his family have enjoyed.   The relationship with his parents is tenuous.   His mother describes him as loyal and friendly, "He has never known a stranger.   He gets that from his dad's side of the family." As for the crime, she says, "As a mother, I am heart broken."   She reports he was a good kid and a kind man, "He's not a bad person.   He's very tender hearted."   Although she struggles to

understand his actions, she reports that she will support her son 100% upon his release from custody.

The case – so out of character for Mr. Long – has rocked his family's world.  They all struggle to come to terms with his actions, actions that are far beyond the Johnnie Long they know him to be.  Learning of the indictment, his sons have essentially cut off all communications with him.  The time he has spent in custody has included hours of thought on how to rebuild his connection with his children.  He sits in jail wondering how and what he will do, a sense of having nothing, having destroyed every facet of his life.  And, yet, he is determined to rebuild, to return to a successful life.

There is little opportunity for constructive activity in the Sherburne County Jail.  Had he been in the Bureau of Prisons these past months, he would have been able to work, to take vocational classes, and to take advantage of other resources within the prison.  He has done what he can to remain productively engaged at the county jail.  He participated in the Alternatives to Violence Program, successfully completing the program.  He has taken Algebra classes through the GED program, simply to keep his mind active.  And he has read numerous volumes of books.  He works to make much out of what little is available.

Upon completion of his incarceration, he plans to move to Georgia near his parents.  He asks the Court designate that the Bureau of Prisons and U.S. Probation Office work to allow him that relocation.  He has nothing in Minnesota.  His support system is in Georgia.

II.     Criminal History Category

While Mr. Long does not argue that his criminal history is overstated, he respectfully

moves the Court to find that the facts underlying the Category of II warrant additional consideration for a downward variance.

The criminal history category results from a single misdemeanor conviction in 2012. The misdemeanor was the result of an email Mr. Long sent to his ex-wife. The email violated a no-contact order. The sentence imposed was 3-days jail. No further convictions are on his record. The minor nature of the crime is shown by the imposed 3-day sentence.

His criminal history is minimal.

III.   Conclusion

Based on the records before this Court, a sentence of not greater than 24 months is warranted under the law.

Dated: July 30, 2015

Respectfully submitted,

*/s Caroline Durham*

_____
Caroline Durham
Attorney for Defendant
Attorney Reg. No. 24921X
413 Wacouta Street, Suite 430
St. Paul, MN   55101
(612) 272-9111