UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

```
-----------------------------------------------------------
                            )  COURT FILE
UNITED STATES of AMERICA     )  NO. 14-CR-164 (ADM/LIB)
                            )
        vs.                  )
                            )  Courtroom 13 West
JOHNNIE EARL LONG            )  Thursday, August 6, 2015
                            )  Minneapolis, Minnesota
-----------------------------------------------------------
```

# S E N T E N C I N G

BEFORE THE HONORABLE ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

# A P P E A R A N C E S:

For the Government:     **OFFICE OF THE U.S. ATTORNEY**
                        By:  ANDREW R. WINTER
                             Assistant U.S. Attorney
                        600 United States Courthouse
                        300 South Fourth Street
                        Minneapolis, Minnesota  55415


For the Defendant:      CAROLINE DURHAM, ESQUIRE
                        101 East Fifth Street - Suite 2626
                        St. Paul, Minnesota  55101


Court Reporter:         **TIMOTHY J. WILLETTE, RDR, CRR, CBC, CCP**
                        Official Court Reporter - U.S.D.C.
                        1005 United States Courthouse
                        300 South Fourth Street
                        Minneapolis, Minnesota  55415
                        612.664.5108

```
 1          (9:00 a.m.)

 2                      P R O C E E D I N G S

 3                        IN OPEN COURT

 4          (Defendant present)

 5              THE COURT:  Good morning.  Please be seated.

 6              THE CLERK:  The matter before the Court is U.S.A.

 7      versus Johnnie Long.

 8              Counsel, would you please note your appearances

 9      for the record.

10              MR. WINTER:  Good morning, Your Honor.  Andrew

11      Winter appearing on behalf of the United States, John Rayman

12      from Probation as well.

13              THE COURT:  Good morning, Mr. Winter and

14      Mr. Rayman.

15              Ms. Durham.

16              MS. DURHAM:  Good morning, Your Honor.  Caroline

17      Durham on behalf of Mr. Long, who is at counsel table.

18              THE COURT:  And good morning as well, Ms. Durham

19      and Mr. Long.

20              I think we are well aware of the fact that this

21      matter is on for sentencing this morning.  Excuse me.  I'm

22      having a little voice problem.  The presentence

23      investigation has been completed by Ms. Smith of the

24      Probation Office and I know both the prosecution and the

25      defense have had an opportunity to review that.  It is my
```

1     understanding that there are no objections by the

2     prosecution to the factual statements nor the guideline

3     analysis within that presentence report.

4               Is that accurate, Mr. Winter?

5               MR. WINTER:  That is correct, Your Honor.

6               THE COURT:  And I think the same is true from the

7     defense perspective, Ms. Durham?

8               MS. DURHAM:  Yes, Your Honor.

9               THE COURT:  That being the case here, I do adopt

10    the presentence report as my findings of fact and the

11    guideline analysis for purposes of the record is as follows.

12              This is a Base Level Offense of 12 based on the

13    nature of the offense itself, that being an offense of false

14    information and hoaxes.

15              Two points are required to be added under the

16    guideline table because this offense involved two or more

17    threats, increasing the offense by two levels.  The

18    defendant sent white powder and threatening letters to

19    approximately six people on the day of the offense.

20              An additional four points are added under the

21    guidelines because there was a substantial -- in this case

22    very substantial -- expenditure of funds to clean up,

23    decontaminate, or otherwise respond to this offense.  Law

24    enforcement and government officials expended close to or

25    near -- slightly over $87,000 during the investigation of

1    the instant offense.

2        Three additional points are required to be added

3    because the victim was a government officer or employee, and

4    the offense was motivated by the status, that is, the public

5    official status.  That requires a three-point enhancement.

6    There were six victims the defendant sent letters to and

7    they were all government employees.

8        Additionally, two points are required to be added

9    because there was an obstruction of justice in the process,

10   an attempt to obstruct or impede the administration of

11   justice with respect to the investigation, prosecution, or

12   sentencing of the offense and the obstructive conduct

13   related to the defendant's offense of conviction and

14   relevant conduct.

15       That adjusts, when we do the math, the level to

16   23.

17       Three points are then deducted for Mr. Long's

18   acceptance of his personal responsibility as evidenced by

19   his timely guilty plea, which brings the level to 20 for

20   purposes of sentencing.

21       He has three criminal history points, which places

22   him in Category II for purposes of the guidelines, which

23   would make the guidelines sentence in this case 37 to 46

24   months; the supervised release period one to three years;

25   the fine range $7,500 to a high of $75,000, plus costs of

1    imprisonment or supervised release.  As I indicated before,

2    there needs to be restitution for the cost of the cleanup of

3    the offense and other related costs and that amount is

4    $87,142.04, and the applicability of a $100 special

5    assessment.

6            Is that guideline calculus consistent with your

7    understanding of the guideline application, Mr. Winter?

8            MR. WINTER:  Yes, it is.

9            THE COURT:  And Ms. Durham.

10           MS. DURHAM:  Yes, Your Honor.

11           THE COURT:  All right.  I'm sure at this point,

12   Mr. Long, it seems like this is all math and numbers.  It

13   isn't.  There's a person and a crime behind this whole

14   reason that we're in court today, and so that doesn't end

15   the analysis of what the sentence should be in this case.

16           I have received for my consideration a number of

17   materials.  Of course, I did receive your letter, Mr. Long,

18   and I have received a victim impact statement from several

19   individuals that are incorporated within the file.

20           And at the conclusion, Mr. Winter, we shouldn't

21   forget that we need to deal with the issue of sealing with

22   regard to the various communications the Court has received.

23           All right.  We'll now proceed in the following

24   fashion.

25           I'm going to hear from Ms. Durham first with

1   regard to her sentencing position and the factors beyond

2   what we've already talked about that she thinks I should

3   consider.  I'll give the Government an opportunity to

4   respond to that.

5           Mr. Winter, were you intending to have any victims

6   speak or will there be a presentation by the Government

7   beyond your argument?

8           MR. WINTER:  There will be no presentation beyond

9   my argument.  There are two victims present in the

10  courtroom.  One had submitted a letter and the other just

11  wanted to observe the proceedings without speaking.

12          THE COURT:  No allocution, though.

13          MR. WINTER:  No allocution.

14          THE COURT:  All right.  So then I'll hear from

15  Mr. Winter and I'll save the final word for you, Mr. Long.

16  If there's anything you want to say or would like me to

17  consider about your situation, I'd be happy to hear from

18  you.

19          Ms. Durham, we'll proceed with your presentation.

20          MS. DURHAM:  Thank you, Your Honor.

21          Your Honor, I have had the opportunity to work

22  with and represent Mr. Long since before he was indicted

23  here in federal court.

24          When he was first arrested in December, he was

25  held and charged in Pine County where the letters were sent.

1    He has remained both in the Pine County Jail and in the

2    Sherburne County Jail for almost two solid years.  It's an

3    unusual circumstance in a case like this, but there are a

4    couple of reasons that that time is important.

5            When we look at the 3553(a) factors, most of the

6    considerations revolve around addressing and ensuring that

7    there is not re-offense by this individual.  And what we

8    know is, he has since his time in Sherburne County, which

9    was just a couple of months, about six months after he was

10   arrested, he has thrived in this sense -- you don't think of

11   people thriving in jail.

12           And again, I think as this Court is well aware,

13   the county jail in Sherburne has almost no programming.  If

14   he had been in the Bureau of Prisons as we anticipated he

15   might have been about a year ago, he would have had an

16   opportunity to have a job where he earned a little bit of

17   money and could have started paying restitution.  He would

18   have had a chance to do college.  He would have had a chance

19   to begin to build those skills.  There's not much of that in

20   Sherburne County.

21           And yet what Mr. Long did was, he lived in such a

22   way there at the jail that he was chosen and allowed to be a

23   trustee.  I probably can't even count on two hands how many

24   clients I've had in my career that have had that honor given

25   to them, give them freedom within the jail to help jailers

1  out with keeping it clean.  He engaged in math classes to

2  keep his mind busy.  He is vociferous reader.  He has had no

3  violations since he's been in the jail.

4         And all of that speaks to two things.  One is, the

5  message about incarceration has landed on him and landed on

6  him hard.  Two is, he is a person who will rebuild his life,

7  which is what he has to do.  And I won't belabor the point

8  about how much of his life he's lost because I think I've

9  laid that out pretty fully in the position paper.

10        Recognizing and understanding the impact that his

11 actions had -- and I believe that the explanation for how

12 this spun out of control and how he got into it in the first

13 place is clear in the papers that we submitted, and at the

14 same time there's a recognition of the impact that it's had,

15 Your Honor.  The point of incarceration is to say get your

16 life in order and that's what Mr. Long has worked to do.

17        We are asking that you not sentence him to more

18 than 24 months.  And I recognize -- and Mr. Winter and I

19 have had chance to talk about this case throughout and we've

20 talked this morning, and he's going to highlight for you

21 that there is a letter that he purportedly gave to one of

22 his jail mates when he was in Pine County before the

23 indictment came down here.  That letter was never used, it's

24 never been analyzed, but the assertion by the Government is

25 this thing that happened -- and while there was disruption

1   and fear, there was no actual harm -- continued.  And what I

2   would submit, Your Honor, is, even if you consider the

3   letter that the Government reads to you today, that was

4   almost two years ago and Mr. Long has stopped.

5          His goal is to move from Minnesota, and I would

6   ask given the nature of the case, the nature of the

7   courtroom this morning, that I submit to you his request in

8   writing in terms of where he would like to go if there is

9   prison time to be served for a period of time, and also some

10  language by the Court to allow him potentially, if the

11  Bureau of Prisons and Probation can work this out -- our

12  local folks aren't sure that it will happen -- that he be

13  allowed to relocate outside of Minnesota.  He does not have

14  a life here.  He does not want to be invested here.  Law

15  enforcement doesn't want him here and the people in the back

16  of the courtroom don't want him here, and it's better for

17  all people involved that he be able to start clean.

18          It's been a long time coming to this day, Your

19  Honor.  He's a man who has shown through the limited ways

20  that he can that he's gotten the message loud and clear.

21  He's going to have financial obligations to take care of and

22  he is pushing toward middle age and he's going to have to

23  figure out how to make things work for himself.  He's got a

24  supportive family, he's sober, he's got a community he can

25  go to.  Those are three of the things that the Department of

1    Justice and the Bureau of Prisons studies all say make for a

2    successful individual on the outside.

3              We thank you for your time.

4              THE COURT:  Thank you, Ms. Durham.

5              Mr. Winter?

6              MR. WINTER:  Thank you, your Honor.

7              As the Government's memorandum set forth, Your

8    Honor, one of the things that makes this case I think

9    unusual and worthy of the sentence that we're asking for,

10   which is the top of the guidelines range, is the persistent,

11   sustained, revenge-motivated nature of the defendant's

12   crime.

13             When you look at the beginning of this sordid

14   story, it was July of 2013 and it was the letter sent to

15   Carrie Doom, and the end of this sordid story is his

16   attempting to recruit a jail inmate to do the exact same

17   thing he had been doing, and this is after he had already

18   confessed to authorities.  So that is approximately a

19   five-month span where Mr. Long persisted.

20             This is not a crime of frustration, heartbreak.

21   There are certainly, arguably, seeds of that.  But as the

22   Court knows, people face difficulties.  Every citizen in

23   this society faces difficulties every day.  Everyone's heart

24   gets broken at some point in time.  Everyone feels betrayed

25   at some point in time.  Very few people, very few people

1    indeed engage in this rather extraordinary series of crimes,

2    and that's what I would like the Court to focus on.

3         I don't have any disputes factually with the fact

4    that he has been in custody and is behaving well for the

5    last 18, 20, 24 months.  That's a fact.

6         THE COURT:  What is the reason for the

7    considerable delay?

8         MR. WINTER:  I do not know.  I don't want to --

9    well, all that I know is the PSR -- when the parties

10   received the PSR, I believe we turned our objections around

11   in a timely fashion, so I think it's, as far as I know, a

12   backlog in Probation, but I'll let Probation speak to that.

13        THE COURT:  It's a systemic delay.  It isn't

14   any --

15        MR. WINTER:  Systemic delay, exactly.

16        THE COURT:  Too bad.

17        MR. WINTER:  But, Your Honor, the defendant's

18   claim that this stemmed out of this toxic relationship

19   apparently with his ex-wife belies what else happened in the

20   case, and the example is the very kicking -- the kickoff

21   event here.

22        He sends a letter to his ex-wife's attorney.  He

23   has no grudge against his ex-wife's attorney.  He may have a

24   grudge against his ex-wife and his ex-wife's friends, but no

25   grudge against the ex-wife and her attorney.  Carrie Doom

1   received this letter, the powder fell in her lap, a death

2   threat, and then an explosive device several driveways down.

3   That belies his claims that this is sort of an

4   understandable response, albeit overstated, overreacted, out

5   of frustration.

6          I think the fact that Mr. Long represents this to

7   the Court at this point in time shows a very, very

8   significant gap in his understanding of what it is that he's

9   done and the threat that he presents.  He does not

10  recognize, he does not recognize what he's done and the

11  number of people that he's harmed and the number of innocent

12  people that he's harmed, innocent people.

13         Then we move to the law enforcement piece of this,

14  the massive amount of energy wasted and expended because of

15  the defendant's very calculated, pretty sharp work in

16  throwing them off his trail.  And not only throwing them off

17  his trail, but throwing several other people under the train

18  of law enforcement's investigation.  And not only that, but

19  painting himself as a victim at the same time.

20         And Jeff Selvog was the first victim of that,

21  because when Carrie Doom received her letter, around the

22  same time she'd also received this threatening e-mail

23  purportedly from Jeff Selvog, and so her natural response

24  was, "Gee, police, you should look at Jeff Selvog," all that

25  orchestrated, calculated, planned, and very likely enjoyed

1    by the defendant.

2              And then the tip line, multiple tips to the tip

3    line, calling in again with this idea that he's going to

4    throw them off his trail, throw other people under the bus

5    and make himself the victim.

6              And then we move to the feigned kidnappings.  And

7    these were not just, "Hey, I'm calling 911 to say I got

8    kidnapped."  He had the handcuffs, he had this whole story,

9    he sat down with the officers, full two-hour

10   question-and-answer session, search warrants executed twice.

11   It's an astonishing effort by the defendant.  It's

12   remarkable.

13             And then we move forward to the time where he's

14   finally arrested.  And he doesn't fall on the sword right

15   away, Your Honor.  He sat for 30 minutes and denied.  And

16   then finally, like layers of an onion, he started to admit

17   his conduct and he admitted virtually all of the criminal

18   conduct that we're discussing today, and the interview was

19   taped and it was Mirandized.

20             And so everyone thought this case was over, except

21   it wasn't, because a short time after that he recruited an

22   associate at the jail.  I won't read the entire contents of

23   the letter that he had written, but I do want to read into

24   the record and highlight for the Court -- and again, this is

25   in December, so this is a full five months after he had sent

1      that letter to Carrie Doom.

2              He basically instructs this individual to send the

3      same letters out to the same victims.  You know, presumably,

4      even though I confessed to this crime, since I was in jail,

5      I couldn't really be responsible for these crimes, his

6      intent again to generate a full-on investigation, but it

7      does give you a glimpse into the mind.

8              He instructs the individual to make a certain

9      concoction of white powder, including insect killer.  He

10     instructs the individual to use the dull-shine cheap

11     computer paper presumably so when it's Xeroxed it doesn't

12     work as well.  He instructs the individual to use gloves all

13     the time.  No DNA.  He says in the letter no DNA or prints.

14     Use water to seal the envelopes.  Use water to put the

15     stamps on.

16              And then he instructs the individual to again

17     engage in this false e-mail campaign.  And the one that I

18     want to highlight is, he instructs the individual to draft

19     an e-mail that appears to come from his ex-wife's mother, so

20     his former mother-in-law.  And the text of the e-mail is --

21     and it's to Jeff Selvog.  Jeff Selvog is, again, the person

22     whom he threw under the bus at the very beginning of this

23     case.  And the text was, quote:

24              "Jeff, you are a piece of shit.  Plead guilty or

25     you'll end up like John.  We will hunt your kids down and

1    kill them.  Question is, which one first."

2          So he's recruiting an inmate to make this e-mail

3    appear to have come from his ex-wife's mother, his own

4    mother-in-law.

5          And I highlight this, Your Honor, because it shows

6    the depth and the unusual nature of the defendant's criminal

7    activity.  And at the end of it he essentially says:

8          "Repeat all this until I get set free," "Repeat

9    all this until I get set free," all the instructions he gave

10   this individual, and he was going to pay him.  And

11   fortunately, as defense counsel points out, this got

12   uncovered and it never happened, but Johnnie Long doesn't

13   get credit for that.

14          Then, Your Honor, I want to point out a couple of

15   things that I find quite honestly troubling about the letter

16   he sent to the Court.  He obviously is endeavoring to show

17   you his good side.  Understood.  But when you read this

18   letter closely and then you also look at his

19   acceptance-of-responsibility statement that he gave

20   Ms. Smith, this again is an individual who is not

21   remorseful, he does not understand his crimes, and those

22   things, in the Government's estimation, relate to potential

23   for recidivism and all those 3553(a) factors that the Court

24   must consider.  And one of the -- it breaks down into a

25   couple categories.

1          First off, he is still -- in his letter to you,

2     Your Honor, he's blaming other people and he is claiming

3     that he's a victim.  That's the exact behavior that was part

4     and parcel to the whole criminal conduct.  He says:

5          "Your Honor, I have paid a very steep price," and

6     then he lists the things that have happened to him, to him.

7     Not to the victims, but to him.

8          He takes shots at his mother-in-law:

9          "My frustration" -- and this is in the middle of

10    the second page -- "My frustration for all that has scared

11    me and caused real trust issues.  But as I said about my

12    sons, behavior is learned.  Her mother," meaning his

13    ex-wife's mother, his own mother-in-law, "did it to every

14    man I ever knew her to be around."

15         Again, pointing the fingers at somebody else.

16         He takes shots at the Government at the top of

17    that same page:

18         "[T]he upward departures would seem to be a 'pile

19    it on' sentence," like you should feel sorry for him because

20    he's a victim.

21         "There are events and circumstances that are both

22    leading and misleading.  Every case has facts and evidence

23    to sustain or not sustain a case."

24         He completely misrepresents the nature of his own

25    detention hearing.  He claims at the hearing that the

1   Government argued that we objected to his release on bond

2   because there was no one there for him and it would be a bad

3   idea.  That's not true.  We requested detention because we

4   felt he was a danger to the community and he was a flight

5   risk, primarily a danger to the community.  Again, this is

6   an effort to show that people should feel sorry for him.

7        And then he says about prosecution in general:

8   "'They could indict a ham sandwich if worded properly.'"

9   That suggests to me that he thinks this is somehow

10  overcharged, or the evidence was thin, and I submit that

11  it's far from the case.

12       Lastly, Your Honor, I just want to highlight a

13  couple of quotes, because I think she really says it well

14  and it encapsulates why we're here and why the Government is

15  asking for the sentence that we are requesting, and that's

16  just a couple highlights from Carrie Doom's letter,

17  paragraph 29 of the PSR:

18       "Words cannot describe the sheer terror I felt at

19  that moment" -- and she's describing opening the letter --

20  "and in the hours I spent waiting for the CDC to give me the

21  all clear that it was nothing harmful."

22       Later on she discusses the long-term effects, and

23  this is on page 7:

24       "I don't have any visible scars, but I am not the

25  person I used to be.  I will never understand why Mr. Long

1    did what he did and I am certain that Mr. Long never

2    considered how his actions would affect others.  If I had my

3    guess, he probably thought as long as he did not physically

4    harm anyone, no one would get hurt.  Well, if that is what

5    he was thinking, he was wrong.  My entire family has been

6    hurt by him and I can say firsthand these emotional wounds

7    are incredibly hard to heal."

8              Later on in the same page, quote:

9              "As a real victim, I can say to Mr. Long that

10   being a victim is not a game, it is not something you

11   pretend to be, it is real, it hurts and the wounds do not

12   heal overnight, but rather you carry those scars with you

13   every day."

14             So, Your Honor, I appreciate you giving me the

15   time to discuss the case.  I would submit that in addition

16   to the argument and our memorandum and all the information

17   the Court has before it, and then looking at the 3553(a)

18   factors, a top-of-the-guidelines sentence is a just

19   sentence, is the reasonable sentence, is the right sentence,

20   and is the only appropriate sentence in this case.

21             Thank you.

22             THE COURT:  Thank you, Mr. Winter.

23             Mr. Long, if you want to come to the lectern with

24   your counsel, Ms. Durham, I'd be happy to hear from you and

25   anything you might want to say about your situation.

1        (Defendant and Ms. Durham approach lectern)

2            THE DEFENDANT:  No, Your Honor.  I just want it in

3    the past is all.

4            THE COURT:  Excuse me?

5            THE DEFENDANT:  I just want it in the past.  I'm

6    sorry for everything and I just want all this in the past,

7    Your Honor.

8            THE COURT:  All right.  Well, I did receive your

9    letter and I've read it and I have some of the same concerns

10   that Mr. Winter has voiced.  Although I think you feel very

11   badly you're in this situation, I don't think you've fully

12   appreciated how terrorizing this was to many of the victims

13   and receiving white powder that spills all over, and the

14   comment that "You're dead" is pretty scary and the crime

15   continued on from there.

16       I'm a judge that rarely sentences at the top end

17   of the guideline range, but I feel I'm compelled to do so in

18   this case because the behavior here -- and I think it could

19   have been several counts; I don't think there was any

20   overcharging by the Government at all -- has a real

21   undercurrent of evil in putting individuals who are just

22   doing their job and had no relationship to you at all in

23   fear for their life.  And the fact that it did not end even

24   with your arrest is extremely troubling and has me hugely

25   concerned about future behavior and whether you have really

1    grasped the full consequences of this.

2         This is one of the more bizarre crimes that I've

3    been involved with over my lengthy career in the criminal

4    justice system.  And the number of victims and the huge

5    costs here, the fact that the entire courthouse had to be

6    evacuated, is something that's a real rarity, and I think

7    the punishment accorded by the top of the guidelines is

8    sufficient.

9         I often, having sentenced individuals for a long

10   time, try to figure out what the sentence would be if there

11   weren't sentencing guidelines, and after I read the offense

12   conduct my initial thought was it should be something in the

13   four- or five-year range, and this is one of the cases where

14   the guidelines end up -- and by doing the framework for

15   analysis that they recommend, it brought it very near that

16   point.

17        This is a pretty scary offense.  I do hope that

18   you, given time -- and I think that process has started.  I

19   don't think Ms. Durham is insincere or incorrect in the

20   sense that there's finally been a turn in your way of

21   thinking about things and perceiving what harm you've done

22   here, but a longer period of reflection about the effects of

23   your behavior is required under the circumstances.

24        Johnnie Earl Long, you have been charged in an

25   indictment with false information and hoaxes in violation of

1    Title 18, United States Code, Section 1038(a), and based

2    upon your plea of guilty, it is considered and adjudged that

3    you are guilty of the offense.

4              It is therefore adjudged that you be committed to

5    the custody of the Bureau of Prisons for imprisonment for a

6    term of 46 months.

7              You are to receive credit for time already served.

8              You are ordered to make restitution in the total

9    amount of $87,142.04, which will be paid as directed in the

10   judgment and commitment, and the payments are to be made

11   payable to the Clerk of the United States District Court for

12   disbursements to the victims in this case, the many

13   institutions that responded and required cleanup as the

14   result of your behavior.

15             It is also ordered that you serve a supervised

16   release term of three years under the following conditions:

17             You are not to commit any crimes; federal, state,

18   or local.

19             You are ordered to abide by the standard

20   conditions of supervised release as recommended by the

21   Sentencing Commission.

22             You are ordered not to possess any firearms,

23   ammunition, destructive device, or other dangerous weapons.

24             You are ordered to cooperate in the collection of

25   your DNA as approved by the Probation Office and is mandated

1    pursuant to Title 18, United States Code, Section 3563(a)

2    and 3583(d).

3          Mandatory drug testing will be suspended in your

4    case since I find that you pose a low risk of future

5    substance abuse.

6          But you are ordered to participate in an approved

7    program for domestic abuse, as well as a psychological and

8    psychiatric counseling or treatment program approved by the

9    Probation Office, and you are ordered to contribute to the

10   costs of such treatment as determined by the Probation

11   Office Co-Payment Program.

12         During the period of your supervision, supervised

13   release, if you are not employed at a regular lawful

14   occupation as deemed appropriate by the Probation Office,

15   you may be required to perform up to 20 hours of community

16   service per week until fully employed.  You are also ordered

17   to participate in training, counseling, daily job search, or

18   other employment-related activities as directed by the

19   Probation Office.

20         You are required to provide the Probation Office

21   access to any requested financial information, including

22   credit reports, credit card bills, bank statements, or

23   telephone bills.

24         You are also prohibited from incurring any new

25   credit card charges or opening additional lines of credit

1    without the approval of the Probation Office.

2           You are ordered to have no contact whatsoever in

3    any form with any of the identified victims of your offense,

4    including letters, communication devices, audio, visual,

5    e-mail, visits, or any contact through a third party without

6    prior consent of the Probation Office.

7           It is also ordered that you pay a special

8    assessment of $100, which is due immediately.

9           In light of the considerable restitution

10   obligation, no fine will be imposed.

11          Mr. Winter, may Counts 2 through 7 be dismissed at

12   this time?

13          MR. WINTER:  The Government so moves, Your Honor.

14          THE COURT:  So ordered.

15          Both parties have a right to appeal this sentence.

16   I want to remind you a notice would have to be filed within

17   14 days or would waive that right to appeal, and you,

18   Mr. Long, are entitled to the continued assistance of

19   counsel in taking an appeal.

20          As I have indicated already for the record, I do

21   find that this sentence of 46 months, which is the top of

22   the guideline box, which is a sentence that I've considered

23   carefully -- and I usually think that some of these

24   sentences are too long, but not in your case.  I think

25   clearly that under the circumstances 46 months is sufficient

1   but not more than necessary to comply with the statutory

2   objectives for sentencing as they are set forth in Title 18,

3   United States Code, Section 3553(a).

4           You are remanded to the custody of the marshal, of

5   course, and the Court will recommend that the place of

6   confinement be outside the state of Minnesota.

7           MS. DURHAM:  Thank you, Your Honor.  We'll have a

8   specific place that we will submit to the Court under seal.

9           THE COURT:  Okay.  You'll need to do that fairly

10  soon since I think Ms. Ellingson will probably prepare the

11  judgment and commitment today.

12          Mr. Winter, I would recommend that all of the

13  submissions to the Court remain under seal in this case and

14  let's put that for the period of five years so that we get

15  through this whole -- the time served.  At some point they

16  have to become public, but it seems to me five years should

17  do it.

18          MR. WINTER:  Yes.  I agree, Your Honor.

19          THE COURT:  All right.  And you'll provide an

20  order to that -- is an oral order --

21          THE CLERK:  Yes.

22          THE COURT:  Okay, an oral order that they be --

23  I've granted today that all victim submissions be under seal

24  for five years.

25          I take it the defense doesn't oppose that.

1    MS. DURHAM:  We don't, Your Honor.  Thank you.

2    MR. WINTER:  Thank you.

3    THE COURT:  Anything further?

4    MS. DURHAM:  No, Your Honor.

5    MR. WINTER:  No, Your Honor.

6    THE COURT:  Court will be in recess.

7    (Proceedings concluded at 9:35 a.m.)

8                    *    *    *    *

9

10                C  E  R  T  I  F  I  C  A  T  E

11

12

13    I, **TIMOTHY J. WILLETTE,** Official Court Reporter

14    for the United States District Court, do hereby

15    certify that the foregoing pages are a true and

16    accurate transcription of my shorthand notes,

17    taken in the aforementioned matter, to the best

18    of my skill and ability.

19

20

           */s/ Timothy J. Willette*

21

22         **TIMOTHY J. WILLETTE, RDR, CRR, CBC, CCP**
          Official Court Reporter - U.S. District Court
23              1005 United States Courthouse
                  300 South Fourth Street
24            Minneapolis, Minnesota  55415-2247
                     612.664.5108

25